# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:12-CV-247-MR-DLH

TUCKER MATERIALS, INC., )
)
)
Plaintiff, )
)
vs. )
)
SAFESOUND ACOUSTICS, INC., )
)
Defendant. )
_____ )

**MEMORANDUM AND OPINION**

**THIS MATTER** is before the Court for resolution of the Defendant's Motion to Dismiss [Doc. 10] and the Plaintiff's Objections [Doc. 20] to the Magistrate Judge's Memorandum and Recommendation [Doc. 19] regarding said motion. For the reasons that follow, this Court will reject the Plaintiff's Objections, and affirm Magistrate Judge Howell's decision recommending dismissal of this action.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties to this action currently are embroiled in two North Carolina state court lawsuits, one of which was filed before this federal action and the other coming shortly after it. Plaintiff, Tucker Materials, Inc.

("Tucker"), is a Georgia corporation that supplies building materials, including acoustical ceiling products. [Doc. 1, ¶5]. Defendant, SafeSound Acoustics, Inc. ("SafeSound"), is a North Carolina corporation engaged in providing and installing acoustical ceiling products for commercial and residential projects. [Doc. 1, ¶6]. In July 2005, the parties entered into a written agreement whereby Tucker would supply SafeSound with acoustical ceiling products and materials on credit and SafeSound would later pay Tucker for its goods delivered pursuant to the agreement. [Doc. 1, ¶7].

According to Tucker, SafeSound purchased acoustical ceiling products from Tucker in the fall of 2009 and failed to pay for them. [Doc. 1, ¶9]. Tucker sued SafeSound on the alleged debt in Buncombe County, North Carolina, District Court on September 15, 2010. [Doc. 1, ¶11]. Tucker also named SafeSound's president as a party defendant, suing her in her individual capacity as a personal guarantor of SafeSound's debt. [Id.]. On the parties' cross motions for summary judgment, the state district court granted Tucker's motions against both SafeSound and its president and denied the defendants' motions. [Doc. 1, ¶13]. The defendants appealed to the North Carolina Court of Appeals. Tucker Materials, Inc., v.

SafeSound Acoustics, Inc., 725 S.E.2d 673, 2012 WL 1687689 (N.C. Ct. App. 2012) (unpublished).

The North Carolina Court of Appeals reversed the state district court's decisions on May 15, 2012. [Id.]. First, the appellate court found genuine issues of material fact existed as to whether SafeSound, as opposed to some unauthorized third party, ordered materials from Tucker on SafeSound's account, and therefore, what amount of money, if any, SafeSound owed Tucker. These issues were remanded for trial. [Id. at *3]. The appellate court also reversed the summary judgment in favor of Tucker on its claim pertaining to SafeSound's president, holding that she signed as president of SafeSound on the guarantee agreement, not in her individual capacity. [Id. at *4-5]. Accordingly, the appellate court vacated the district court's judgment in this regard and directed the court grant summary judgment in her favor on remand. [Id.].

On July 24, 2012, counsel for SafeSound wrote a letter to counsel for Tucker asserting that Tucker had "engaged in conduct that violates Chapter 75 of the North Carolina General Statutes in ways which have harmed SafeSound." [Doc. 1-1]. In short, SafeSound alleged that Tucker employed unfair and deceptive trade practices in its business dealings with SafeSound that drove SafeSound out of business. [Id.] SafeSound

suggested in its letter that Tucker settle all claims with SafeSound by paying SafeSound a lump-sum amount of $300,000. [Id.] On August 14, 2012, Tucker instituted this Declaratory Judgment action. [Doc. 1]. On that same date, counsel for Tucker wrote to counsel for SafeSound, enclosing a copy of Tucker's federal complaint, and said,

> Tucker is unwilling to pay anything at all to settle claims that are wholly lacking in merit. Rather than let threatened litigation be held over Tucker's head, we have filed suit in the federal district court for the Western District of North Carolina asking for a declaration with respect to your client's purported claims.

[Doc. 11-2]. In its federal complaint, Tucker is seeking an order from this Court declaring that (1) Tucker did not violate any section of Chapter 75 of the North Carolina General Statutes in its dealing with SafeSound, and (2) Tucker has not violated the federal antitrust laws in its dealings with SafeSound. [Doc. 1]. Safesound's demand letter, however, made no explicit assertions regarding federal antitrust laws.

On September 20, 2012, SafeSound filed suit in the Buncombe County Superior Court against Tucker, its parent corporation, and one of Tucker's principals. [Doc. 11-3]. SafeSound's suit against Tucker and the other defendants alleges unfair and deceptive trade practices, breach of contract, tortious interference with contracts, and civil conspiracy.

SafeSound alleges it is entitled to compensatory, punitive, and treble damages. [Doc. 11-3]. On October 15, 2012, SafeSound filed a motion to dismiss this federal action. [Doc. 10]. The parties briefed the issues raised by SafeSound's dismissal motion [Docs. 11, 14, 18] and the matter was referred to Magistrate Judge Howell. On January 18, 2013, the parties entered into a consent order [Doc. 23-1] staying the North Carolina Superior Court action pending the resolution of SafeSound's motion to dismiss in this matter. Judge Howell issued his Memorandum and Recommendation decision on April 17, 2013, [Doc. 19] recommending that SafeSound's motion to dismiss be granted. Tucker filed objections to Judge Howell's Memorandum and Recommendation [Doc. 20], and SafeSound responded thereto. [Doc. 23]. This matter is now ripe for resolution by the Court.

## STANDARD OF REVIEW

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the

true ground for the objection." <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. <u>Thomas v. Arn,</u> 474 U.S. 140, 150 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982).

## ANALYSIS

The Federal Declaratory Judgment Act (the "Act") provides that a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however, does not provide an independent basis for federal jurisdiction. <u>City Nat'l Bank v. Edmisten</u>, 681 F.2d 942, 945 n.6 (4th Cir. 1982). Tucker relies on the Court's diversity jurisdiction conferred under 28 U.S.C. § 1332(a), asserting in its Complaint that there is complete diversity between the parties and the amount in controversy exceeds $75,000. [Doc. 1, ¶¶1-3]. SafeSound does not contest this basis for jurisdiction.

Though styled as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), SafeSound's dismissal motion, in substance, requests that this Court exercise its discretion and abstain from entertaining Tucker's declaratory judgment action.[1]  Thus, the issue presented by SafeSound's motion is not whether the Court could exercise jurisdiction over this action but rather whether the Court should exercise such jurisdiction in light of the parallel litigation pending in the North Carolina courts.

The decision to entertain a declaratory judgment action pursuant to the Act is left to the sound discretion of the Court.  The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241, (1952)). The Fourth Circuit has explained that a "declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in

_____

[1] Defendant states that it moves "under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted."  [Doc. 10 at 1]. In its memorandum of law, however, Defendant argues only abstention.  Clearly the Complaint states a claim for declaratory judgment, which is an action upon which relief (i.e. a declaratory judgment) can be granted.   A motion seeking abstention is not addressed in Rule 12.   Thus, Defendant is placed in the untenable position of attempting to fit a square peg into a round hole.  The Court, however, will look to the substance of Defendant's motion rather than its form and will address the question of federal abstention.

clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)). When related state court proceedings are pending, however, "considerations of federalism, efficiency, and comity should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action." Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotations and citations omitted).

The first question for the Court to address is whether it can consider the pendency of the state court action, since it was filed after the present case. Ordinarily dispositive in this situation is the "first to file" rule (or as it is commonly called in the North Carolina courts, a Plea in Abatement) which dictates that the first case to be filed raising the issues at hand is the one that may go forward. Volvo Const. Equip. N. Am., Inc., v. CLM Equip. Co., Inc., 386 F.3d 581, 594-5 (4th Cir. 2004) (quoting Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). The Court, however, may consider the pendency of a subsequently filed action in "special circumstances." Aetna Cas. & Sur. Co., 92 F.2d at 324. The "special circumstances" to be considered when deviating from the "first to

file" rule exist when: (1) the first-filed action is for a declaratory judgment because "such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief[,]" or (2) the party that filed the first action was on notice that a lawsuit was imminent. Family Dollar Stores, Inc. v. Overseas Direct Import Co., Ltd, 2011 WL 148264 (W.D.NC. 2011) (citing with approval Eighth Circuit "special circumstances" rule announced in Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1007, (8th Cir. 1993)). Both of these situations appear to be presented here. Therefore, the Court will consider the pendency[2] of SafeSound's state action against Tucker. This brings the Court to address the first of Tucker's objections.

Tucker asserts Magistrate Judge Howell failed to consider North Carolina's policy in favor of permitting the first of two pending actions to proceed. [Doc. 20, at 7-8]. Tucker cites to Cameron v. Cameron, 235 N.C. 82, 68 S.E.2d 796 (1952), in support of this proposition. The decision in Cameron, however, undermines Plaintiff's argument. Tucker correctly points out that the test for determining whether or not the parties and

---

[2] North Carolina courts view the issue regarding a Plea in Abatement as jurisdictional, seeing the prior pending action as divesting the court in the second case of subject matter jurisdiction to hear it. Cameron v. Cameron, 235 N.C. 82, 84, 68 S.E.2d 796, 798 (1952). Even if the prior pending action is on appeal the rule holds. Clark v. Craven Reg. Med. Authority, 326 N.C. 15, 20, 387 S.E.2d 168, 171 (1990). This leaves to the state court the interesting question of whether the present action divested it of jurisdiction and/or whether the dismissal of this action resurrected its jurisdiction.

causes are the same for the purpose of abatement by reason of the pendency of the prior action is whether the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded. [Doc. 20 at 8 n.4]. In this case, the federal action involves only two parties while the state action involves three additional parties, two of whom are allegedly necessary for a full adjudication of SafeSound's claims, and the federal action requests a declaration of non-liability while the state action sets forth five affirmative claims made by SafeSound and could include all necessary defenses asserted by Tucker. <u>Cameron</u>, 235 N.C. at 85-6, 68 S.E.2d at 798-9. For these reasons, Tucker's reliance on <u>Cameron</u> and the North Carolina state policy are misplaced. It should also be noted that the North Carolina cases regarding this issue address the subject matter jurisdiction of the North Carolina state courts. The subject matter jurisdictions of the North Carolina state courts and the federal courts are entirely independent of one another and based on different principles. Therefore, state court decisions regarding state jurisdiction have no bearing on the jurisdiction of this Court.

Having determined that Tucker's having filed first gains it no advantage, the Court will now consider the precedents of this Circuit regarding the abstention from exercising jurisdiction in matters such as this.

To determine whether to proceed with a federal declaratory judgment action when a related state court proceeding is underway, the Fourth Circuit has focused on the following four factors for guiding the analysis: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for "procedural fencing," for example, to provide another forum in a race for res judicata.  Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994).[3]  The Court will address these factors in turn.

## A. The State's Interest.

North Carolina has a strong interest in resolving the multiple questions of state law raised by the parties.  It bears mentioning here that Tucker was the first party to invoke North Carolina process to seek redress

---

[3] Wilton overruled portions of Nautilus dealing with appellate standards of review. Cf. Wilton, 515 U.S. at 289 with Nautilus, 15 F.3d at 375 (abuse of discretion and not de novo appellate standard applies).  However, the Nautilus factors announced by the Fourth Circuit as guidance for the district courts when they consider whether to exercise discretion or abstain therefrom in a declaratory judgment action remain applicable.  See Penn-America, 368 F.3d at 412.

of SafeSound's alleged debt due to breach of contract. Tucker's initial state court filing resulted in a remand from the state's appellate court with instructions to resolve the identified factual issues at trial in the state's district court. Further, a short time after Tucker filed this action, Safesound instituted a second state court action against Tucker and others claiming unfair and deceptive trade practices, breach of contract, tortious interference with contracts, and civil conspiracy, all under North Carolina law. The North Carolina court system is well-equipped to handle these state law claims. It has already handled the first action through the appeal.

Tucker complains that the demand letter written by counsel for SafeSound alleges violations of federal anti-trust law and exposes Tucker to a risk of future liability. Plaintiff objects to the Magistrate Judge's Memorandum and Recommendation based on his having overlooked these federal issues that arise only in this action. [Doc. 20 at 2-3, 5-6]. Tucker's position, however, is unsupported by the record. The SafeSound demand letter [Doc. 1-1] explicitly alleges in the first sentence of the first paragraph that Tucker "has engaged in conduct that violates Chapter 75 of the North Carolina General Statutes in ways which have harmed SafeSound." [Doc. 1-1]. Nowhere does the letter allege Tucker violated federal anti-trust laws, but instead, asserts only violations of North Carolina law, particularly North

Carolina's unfair and deceptive trade practices act as codified in Chapter 75 of the North Carolina General Statutes. See Doc.1-1 at 3, ("Chapter 75 is not limited to cases where there is a contract between the plaintiff and defendant,…"; "Chapter 75 also covers situations where the plaintiff and defendant are not in direct competition with one another[,]"; "A Chapter 75 claim can be brought against Tucker on the basis of the sort of anti-competitive action described above,"; "It is undisputed that price discrimination among businesses that are similarly situated can constitute a violation of Chapter 75."). Focusing upon SafeSound's demand letter, however, does not end the inquiry. In its state court complaint, all of SafeSound's claims against Tucker assert violations of North Carolina law, not federal.

In its second objection, Tucker asserts that the Magistrate Judge overlooked the risk of future liability it faces if its federal complaint is dismissed. [Doc. 20 at 2-3, 5-6]. Tucker argues that SafeSound, claiming to be out of business, may have resurrected itself as a new corporation with a similar name "that again may demand to do business with Tucker and again may seek to recover purported damages from a continuing refusal to deal." [Id. at 5-6]. Putting aside for the moment that Tucker appears to be

seeking a non-judiciable advisory opinion[4] regarding speculative, prospective activity by a party not before the Court at this time, Tucker's argument is short-circuited by the language contained in its federal complaint. Tucker's Prayer for Relief is precise and narrow: Tucker requests an order from the Court regarding only the legality of its past behavior, and that only as it pertains to a single entity, SafeSound.[5] Given that SafeSound has not in fact asserted any federal anti-trust claim in its state complaint against Tucker, Tucker cannot raise the specter of defending against some future, exclusively federal cause of action where none exist, simply to preserve federal jurisdiction. <u>Public Serv. Comm'n of Utah</u>, 344 U.S. at 248. The weight of this factor tips overwhelmingly in favor of the state's interest in hearing this matter in state court. This Court rejects Tucker's objections that the federal interest is superior.

---

[4]"A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-41 (1937) (internal citations omitted).

[5] Tucker sought the Court's judgment that it: "did not violate any section of Chapter 75 of the North Carolina General Statutes in its dealings with SafeSound," and "has not violated the federal antitrust laws in its dealings with SafeSound[.]"

**B.  The Forum That Can Most Efficiently Resolve the Issues.**

Magistrate Judge Howell determined that the North Carolina courts were better positioned than this Court to resolve all of the parties' issues efficiently.  This Court agrees that this federal action merely presents a subset of the matters pending before the North Carolina courts.  The North Carolina litigation contains all of the parties and all of the claims to date.  This federal action involves just the two principal parties and was brought by Tucker to seek only the pre-emptive resolution of an anticipated cause of action. What Tucker wants in this forum is the Court's order "that it win any such case before it is commenced."  Public Serv. Comm'n of Utah, 344 U.S. at 245.  The fact that the alleged wrongful conduct (if there was any) is complete and not ongoing only adds weight to the North Carolina court side in balancing the relative efficiencies.  The Southern District Court of New York addressed the issue well:

> The Court is mindful that there are circumstances in which anticipatory judgments of non-liability may be appropriate under the DJA, particularly in regards to claims asserting unaccrued or undefined rights or obligations arising under contractual relations such as insurance and intellectual property. However, where the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that the application is not a warranted purpose of the DJA.

<u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002).

Tucker argues that efficiency dictates that this dispute be adjudicated in the present action because it was filed earlier. [Doc. 20 at 7-9]. The United States Supreme Court has provided guidance to answer this argument. In <u>Public Serv. Comm'n of Utah</u>, it more clearly defined the contours of the Declaratory Judgment Act it had begun in the cases of <u>Ashwander v. Tenessee Valley Authority</u>, 297 U.S. 288 (1936), and <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227 (1937). Relevant to this matter is the Court's explication of federal jurisdiction and what deference should be given a declaratory judgment plaintiff proclaiming first-filer status.

> In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. *If the cause of action, which the declaratory defendant threatens to assert, does not*

> *itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.*

Public Serv. Comm'n of Utah, 344 U.S. at 248 (footnote omitted) (emphasis added).   The Court's holding addresses, and resolves, both Tucker's preference to be in federal court as well as its objection that "state law does not control the issue of alleged federal antitrust violations[.]" [Doc. 20 at 9]. While diversity and the amount in controversy provide the present basis for jurisdiction supporting Tucker's federal complaint, Tucker implicitly argues that the federal forum must ultimately prevail over the state because SafeSound's claims set forth in its demand letter suggest federal antitrust violations, an exclusively federal cause of action.  Therefore, if SafeSound were to raise federal antitrust claims, the federal forum would be the only viable one.  SafeSound's latter filed state complaint, however, makes no such claims.  SafeSound's state complaint raises no federal cause of action at all, instead raising multiple claims under state law. Tucker can just as easily raise any affirmative defenses in state court as it can in this forum.

The Court pauses here to note that a certain irony exists in the parties arguing about the most efficient manner and place for resolving their claims. The parties have devoted an enormous amount of time and effort to this procedural jousting match. Tucker filed suit in this Court, anticipatorily seeking adjudication of what, in essence, is a defense. Preferring the federal forum (or maybe surmising SafeSound would not), Tucker sought to defend against a federal antitrust claim that SafeSound had yet to raise, in an effort to preserve jurisdiction on an alternate ground — federal question jurisdiction — should SafeSound name party defendants in a future state action that would destroy complete diversity. Shortly after this action was filed by Tucker, SafeSound indeed filed a separate suit in state court, added a non-diverse defendant so that removal could not occur, but omitted any federal antitrust claims thus preventing the consolidation of these cases. The parties now argue about efficiency, even though these actions have made the administration of this case anything but efficient.

Going forward with this declaratory action would require joining additional parties as Tucker's co-plaintiffs, one of whom is not diverse from SafeSound. That would cause further delay, which would cause further inefficiencies. Moreover, selecting the North Carolina court as the proper

forum would eliminate the inverted nature of any trial that would be conducted in the federal forum. If this case continued on in this Court, Tucker would be a "defending plaintiff" and SafeSound would have to file an answer and allege its causes of action as counterclaims to Tucker's complaint of non-liability. Proceeding with such a procedurally convoluted, upside down action would be anything but efficient.

The federal trial process, too, if conducted in the normal course, would be an exercise in placing the cart before the horse. Following typical protocol, Tucker (and only Tucker) would begin the trial by explaining why it is not liable to SafeSound, a formidable task given that all of SafeSound's theories of liability would not yet be in evidence. SafeSound would then be called to answer but, in actuality, be required to put on evidence as to why Tucker is liable as well as why the other co-plaintiffs are liable too. The co-plaintiffs, not having had the opportunity to speak until this point, would presumably not assert a claim against SafeSound, but would explain why they are neither directly at fault nor vicariously so. The potential for jury[6] confusion is substantial. On the other hand, as the state court matter

---

[6] The Court assumes SafeSound, as declaratory defendant, would demand a jury trial on any counterclaims it would file in this forum since it requested the same in its state court complaint. [Doc. 11-3, ¶4].

presently is constituted, all parties and all issues may proceed in traditional fashion.

For all of these reasons and the reasons set forth by Judge Howell, the most efficient manner of resolving all of the issues between the parties is for this Court to abstain from asserting its jurisdiction and thus allow the state case to go forward. Tucker's objections to the Magistrate Judge's determination that this factor favors the North Carolina courts resolving the parties' contentions more efficiently are rejected.

## C.  The Unnecessary Entanglement Between the Fora.

Permitting the state court action to go forward would prevent any unnecessary "entanglement" between the federal and state court systems. There exists no issue of overlapping questions of law or fact between the two systems; the critical factual and legal questions are present in the state court litigation and can be handled more efficiently by North Carolina as explained <u>supra</u>.  Paradoxically, however, the relief demanded in the federal action is dependent upon the adjudication of the claims asserted in state court, a matter of entanglement best avoided.

This factor weighs in favor of permitting the state court case to go forward and Tucker's objections to the Magistrate Judge's determination that this factor favors the North Carolina forum are rejected.

## D. Procedural Fencing.

Declaratory judgment actions are designed to declare the rights of parties so that they can conform their conduct in order to avoid future damages or litigation. Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1168 (7th Cir. 1969). The acts at issue in this dispute have already been completed, and SafeSound is out of business. A declaratory judgment, in the form of the relief specifically requested by Tucker in its declaratory Complaint, that its past business relationship with SafeSound was impeccable, would do nothing to help it conform that past conduct which SafeSound alleges as the basis for its breach of contract claim and accompanying torts. Therefore, the declaration requested by Tucker from this Court is not consistent with the purpose of the Declaratory Judgment Act. Clearly, Tucker, having received SafeSound's demand letter, concluded a good offense is the best defense and seized the role of plaintiff requesting a declaration of non-liability. In bringing this declaratory action, Tucker effectively reversed the traditional roles of the parties as well as the traditional procedures for adjudicating civil claims. Whether one calls it procedural fencing or an unwarranted application of the Declaratory Judgment Act, the Seventh Circuit did not mince words when it looked upon such tactics with disfavor. "[W]e are of the opinion that to compel

potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor would be a perversion of the Declaratory Judgment Act." <u>Cunningham</u>, 407 F.2d at 1167.

This Court agrees with Magistrate Judge Howell's determination that Tucker's ploy of racing to this courthouse to be first in time and place weighs strongly in favor of finding procedural fencing and thus rejects Tucker's objections to the contrary. <u>See</u> <u>State Farm Fire and Cas. Co. v. Taylor</u>, 118 F.R.D. 426, 429-30 (M.D.N.C. 1988) ("A district court may properly consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is merely anticipatory of a parallel state action.").

Upon weighing all four factors set forth by the Fourth Circuit in <u>Nautilus</u>, upon considering the purpose behind the Declaratory Judgment Act, and upon considering traditional notions of federalism, efficiency, and comity, the Court finds and concludes that abstaining from exercising jurisdiction over this dispute is warranted.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff Tucker's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 20] are **REJECTED**.

**IT IS FURTHER ORDERED** that the Memorandum and Recommendation [Doc. 19] of the Magistrate Judge is **ACCEPTED** and Safesound's Motion to Dismiss [Doc. 10] is **GRANTED**.

Signed: September 6, 2013

Martin Reidinger
United States District Judge